**BARR et al. v. McCAULEY et al.** (No. 1309.)

(Court of Civil Appeals of Texas. El Paso. March 23, 1922. Rehearing Denied May 4, 1922.)

1. **Contracts ⇐270(2)—Contract must be rescinded for fraud promptly upon discovery thereof.**

A party seeking to rescind a contract for fraud cannot speculate on the situation, but must act promptly after discovery of the fraud; and notice of facts and circumstances which would put a man of ordinary prudence upon inquiry is legally equivalent to a knowledge of all the facts a reasonably diligent inquiry would disclose.

2. **Exchange of property ⇐5—Purchaser estopped from rescinding contract for failure to rescind on discovery of facts putting him on inquiry as to whether conditions were as represented.**

Purchaser, who did not rescind contract on discovery of facts putting him upon inquiry as to whether conditions were as represented, and who would have discovered misrepresentations if he had made a reasonably diligent inquiry, but who with knowledge of such facts exchanged certificate of ownership for other lands, could not, more than eight years after the original transaction and on discovery of oil on land conveyed to vendor in exchange for the land so purchased, rescind the contract because of such misrepresentations.

Appeal from District Court, Jones County; W. R. Chapman, Judge.

Suit by John A. Barr and others against Claude McCauley and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Miller & Miller, of Fort Worth, Chas. E. Coombes, of Abilene, and Thomas & Pope, of Anson, for appellants.

Wagstaff & Wagstaff, of Abilene, H. S. Garrett, of Fort Worth, and Shepherd & Kelly, of Eastland, for appellees.

HARPER, C. J. This suit was filed, original petition, by the plaintiffs (appellants here), June 9, 1919, against Claude McCauley, the Texas Company, A. E. Olsen Liberty Refining Company, and L. E. Couch, to cancel a contract and deed executed pursuant to such contract to 344.5 acres of land in Stephens county, describing same, for fraud or mutual mistake of the parties, and, in the alternative, against Claude McCauley for the value of the lands in case they are not entitled to a rescission and cancellation as to the other parties.

Defendant McCauley answered by general demurrer, general denial, and pleaded, in detail, his statement of the facts, which will be more definitely stated hereinafter; and pleaded the two, three, and five years' statutes of limitations.

Defendant Liberty Refining Company an-

swered by general denial and specially that it purchased one-fourth interest fee-simple title in the lands described from Claude Mc-Cauley, for a valuable consideration, without notice, actual or constructive, of any fraud or fraudulent representations upon the part of said McCauley embracing the sale to the latter, etc.

The Texas Company answered by general demurrer, general denial, and specially that plaintiff John A. Barr and wife, the latter now deceased, conveyed the lands, by warranty deed duly executed to Claude McCauley, for a valuable consideration, said deed duly recorded in Stephens county, Tex., September 17, 1910; that thereafter, August 20, 1917, relying upon said deed and without notice of any fraud, the Producers' Oil Company purchased an oil, gas, and sulphur lease from said McCauley and wife; that thereafter, February 21, 1918, it purchased from said Producers' Oil Company the latter's leasehold interest, wherefore it became an innocent purchaser for value.

That plaintiffs knew said facts and sat idly by and permitted it to incur large expenditures, etc.; for that reason they are estopped.

Defendant Couch answered by general denial and specially that he was owner in fee simple of one-fourth interest of the oil, gas, and other minerals in and under 350 acres, part of which includes all of the land in controversy, transferred by McCauley to the Texas Refining Company and by the latter to the defendant Couch, for a valuable consideration without notice, actual or constructive, of any fraud, etc., and is therefore an innocent purchaser.

At the close of plaintiffs' testimony, the court instructed a verdict for the defendants, and judgment was entered accordingly in all things as prayed for by said defendants.

This action by the court is assigned as error upon the following grounds:

"(a) The pleadings and the evidence fairly raise the issue of fraud so as to require the same to be submitted to the jury.

"(b) The pleadings and the evidence fairly raised the issue as to whether plaintiffs did discover, or could by the exercise of reasonable diligence have discovered, the fraud perpetrated upon them within the period of limitation.

"(c) The pleadings and the evidence fairly raised the issue as to whether plaintiffs had waived the said fraud and ratified the deed herein attacked.

"(d) The pleadings and the evidence fairly raise the issue as to whether plaintiffs had knowledge or notice of any fact as to the character and quality of the land in controversy herein, such as pursued by them with reasonable diligence would have discovered the truth.

"(e) The pleadings and the evidence raised the issue as to whether there were sufficient reasons why the plaintiffs did not discover, or by the exercise of reasonable diligence would have discovered, the falsity of the representations of the defendant McCauley as to the char-acter and quality of the Mexico lands more than four years next before the institution of this suit, requiring such issue to be submitted to the jury."

The undisputed evidence shows that plaintiff Barr, some time prior to September 16, 1910, having heard of the lands in Mexico which were on the market as the Cajones Colony lands in the state of Oaxaca, Mexico, went to defendant McCauley, whom he had known as a lawyer and banker. He testified:

"I asked him about it. McCauley replied that he knew nothing about the lands; had not been on it: 'I will take you to Williams,' who was secretary of the company; 'he has been over the land.' "

Then follows his statements as to the descriptions given by said Williams, as to how fine the lands were, what they would grow, etc. Then he took up the matter of trading the lands in controversy with McCauley for the said Mexico lands. These conversations culminated in the execution of the following instrument:

"The State of Texas, County of Stephens.

"This agreement between Claude McCauley of Cisco, Texas, party of the first part, and J. A. Barr of Eolian, Texas, party of the second part, witnesseth: The first party is the owner of 350 acres of land adjoining the town site of Bailey in the Rio Cajones Colony in the state of Oaxaca, Mexico, also 600 acres of land being the W. ½ of block 33 and the east 100 acres of block 32 according to the map of the said Cajones lands now in the office of the said Rio Cajones Co. in Cisco, Texas, and the said first party for a valuable consideration has sold to the second party 50 acres of the said 350-acre tract and 526.36 acres of the said 600-acre tract out of blocks 32 and 33, and neither of the parties hereto having seen said land, it is agreed that the second party is to select out of said tracts within the next sixty days the land he is entitled to as above stated under this contract, and when second party makes such selection he is to immediately notify first party and first party is to cause to be issued and delivered a land certificate by the said Rio Cajones Co. calling for the lands the second party selects under this contract in favor of the second party.

"The second party agrees that in selecting his 50 acres of land out of the 350-acre tract referred to, he will not designate same so as to reach across the entire north side of said 350-acre tract; that he will not designate the said 50 acres in a way that will leave the first party his 300 acres so situated that it does not adjoin the said townsite to Bailey. Witness our hands at Breckenridge, Texas, this the 16th day of September, 1910.

"Claude McCauley, First Party.
"J. A. Barr, Second Party.

"Witnesses:
"H. B. Furr.
"W. A. Clack."

Barr again testified that he executed a deed to the lands at the same time, and the

exchange was made. At this time McCauley paid to Barr $900 cash, and assumed deferred payments owing by Barr on the land. Thereafter he said:

"I took my family into Mexico the latter part of October, and we remained there until the latter part of March or the first of April, 1911. During this time Williams pointed out the 50 acres near the town site of Bailey, mentioned in the agreement copied above."

The certificate of ownership mentioned in the instrument copied above was dated November 15, 1910.

In 1913 Barr transferred this certificate to Henry S. and W. Harrison Hall, and received as consideration 240 acres of land in Jasper and Newton counties, Tex. In 1919 Barr traded 1.4 of this land for the certificate to the lands in Mexico, and in June, 1919, brought this suit.

As to proposition (a), the evidence is sufficient to have required the court to submit that question to the jury, but for the fact that it clearly appears from the undisputed facts that he as a matter of law had waived his right to rescind and cancel his deed because of fraudulent representations inducing its execution.

[1] The rule is that a party seeking to rescind a contract for fraud cannot speculate on the situation, but must act promptly after discovering the fraud, and notice of facts and circumstances which would put a man of ordinary prudence upon inquiry is in the eye of the law equivalent to a knowledge of all the facts a reasonably diligent inquiry would disclose. McCauley pleaded and Barr testified that, immediately after the execution of the contract, he took his family to Mexico and lived, for approximately five months, within a short distance of this land; that he discovered that there were no schools, no roads sufficient to enable him to reach the larger tract called for in his contract; that the country was rough, and so covered with tropical growth that it was impossible to travel through it without cutting one's way, and he admits finding many other things represented by McCauley and Williams to be true which were not in fact true, not necessary to mention here in detail, but which are clearly sufficient to have put him upon inquiry, if not in fact conclusive evidence to a man of ordinary intelligence that he had been overreached and defrauded in the exchange of his lands. Sowell v. Hoffman (Tex. Civ. App.) 182 S. W. 1152; Shappirio v. Goldberg, 192 U. S. 232, 24 Sup. Ct. 259, 48 L. Ed. 419; Waggoner v. Zundelowitz (Tex. Com. App.) 231 S. W. 721.

[2] Again, with the knowledge of these things he returns to the United States and exchanges his certificate for other lands in 1913, afterwards disposes of 314 acres of such other lands and enjoyed the benefits therefrom until 1919, eight years, before filing this suit, and then only after discovery of oil on or in the vicinity of his Stephens county lands. Minter v. Hawkins, 54 Tex. Civ. App. 228, 117 S. W. 172.

Again, he had 60 days after the execution of the contract and deed to decide on the lands, and just 60 days afterwards, a part of which time he had been on and about the lands, the certificate was issued to him and he accepted. Thus he was given ample opportunity to investigate the facts, and, in fact, did discover facts which sufficiently put him upon notice, and for that reason he cannot now, eight years afterwards, be heard to claim that he did not in fact so investigate. McEntire v. Thomason (Tex. Civ. App.) 210 S. W. 563.

The plaintiffs' plea for rescission as well as any claim for damages against McCauley are barred by the statutes of two and four years. Chicago, T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; McEntire v. Thomason, supra.

The court did not err in instructing a verdict because under the admitted facts the plaintiff has waived his right to rescind and for damages by laches.

Affirmed.